```
                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND

MIKO SQUIRE                       *

            Plaintiff             *

        vs.                       *  CIVIL ACTION NO. MJG-17-3597

FEDEX FREIGHT, INC.               *

            Defendant             *

*       *       *       *       *       *       *       *       *
```

## MEMORANDUM AND ORDER

The Court has before it Defendant FedEx Freight, Inc.'s Partial Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 21] and the materials submitted relating thereto. The Court finds that a hearing is unnecessary.

I. BACKGROUND[1]

FedEx Freight, Inc. is the remaining Defendant in this case as the Court previously granted Defendant Terrika Martin's Motion to Dismiss. See Order Re: Motions at 2, ECF No. 19. Plaintiff's Amended Complaint [ECF No. 21] charges Defendant with retaliation and discrimination based on (1) gender identity, (2) sex, and (3) sexual orientation, in violation of the Maryland Fair Employment Practices Act.

---

[1] The "facts" herein are as alleged by Plaintiff and are not necessarily agreed upon by the Defendant.

Miko Squire ("Squire") worked as a truck driver for FedEx Freight, Inc. ("FedEx") from January 2014 to March 2017. Am. Compl. ¶ 3, ECF No. 20. Squire was born female but has identified as male his entire adult life.[2] Id. ¶¶ 4-5. Squire currently identifies as male and is married to a female. Id. ¶ 4.

In January 2014, FedEx hired Squire as a truck driver, and he worked for over two years without complaint. Id. ¶ 6. In August 2016, Squire submitted a request for time off from work to his Human Resources representative, Terrika Martin ("Martin"), in order to have a hysterectomy, the final stage of gender reassignment surgery. Id. ¶ 7.

Upon returning to work in October 2016, Squire faced discipline and criticism by FedEx, even though his performance remained the same as before his surgery. Id. ¶ 9. Squire believed this treatment was due to his gender, gender identity, and/or sexual orientation. Id. Squire was afraid that Martin had informed FedEx of his operation and gender change. Id. ¶ 11. Martin was aware of Squire's gender change, as she had advised Squire not to report his hysterectomy to the Department of Transportation. Id. ¶ 8. When Squire expressed concern to

---

[2] Plaintiff's birth gender does not appear on his birth certificate or any document provided to employers during the hiring process, thus FedEx may have been unaware that Plaintiff was born female when hired. Am. Compl. ¶ 5, ECF No. 20.

Martin that he was being discriminated by FedEx, Martin stated that based on the factual circumstances of each incident, Squire should not have faced discipline. Id. ¶ 11.

On March 20, 2017, at the end of a work shift, FedEx informed Squire that he would have to work an additional shift that day. Id. ¶ 12. FedEx's policy is to assign overtime based on how long an employee has been at FedEx, and those on a shift that have been employed for the least amount of time are typically assigned any extra work. Id. ¶ 13. Squire advised FedEx that there were other employees with a shorter tenure who should be assigned the extra work. Id. ¶ 14. Additionally, Squire advised FedEx that he was unable to work due to a pre-existing doctor's appointment. Id. ¶ 12. FedEx advised Squire that it is against policy to refuse extra work, however, no such policy was included in FedEx's online manual, which is several hundred pages long. Id. ¶¶ 15-16.

After refusing to work the "extra work" shift, FedEx suspended, and later terminated Squire's employment. Id. ¶¶ 15, 17. FedEx claims Squire's termination was a result of his refusal to work. Id. ¶ 17. Squire alleges his termination was the result of discrimination by FedEx. Id.

On March 20, 2017, Squire completed an EEOC Intake Questionnaire [ECF No. 24-1]. However, in his questionnaire Squire did not mark any box under the section entitled, "What is

3

the reason (basis) for your claim of employment discrimination?"[3] Id. at 2. On the final page of the questionnaire, a complainant may mark either of two boxes. One requests an EEOC employee speak with the complainant and the other requests the EEOC to file a charge. Squire did not mark either box. Id. at 4.

On May 11, 2017, Squire filed an EEOC Charge of Discrimination [ECF No. 22-1]. In his charge, Squire only marks the box for "SEX," under the section entitled "DISCRIMINATION BASED ON." Id. Squire specifies that he believes he was discriminated against based on his "sex (Gender Identity/Transgender)." Id.

On August 10, 2017, the EEOC issued a Dismissal and Notice of Rights [ECF No. 18-3] to Squire.

Squire presents claims for retaliation and employment discrimination based on (1) gender, (2) gender identity, and/or (3) sexual orientation, under the Maryland Fair Employment Practices Act ("MFEPA"). MD. CODE ANN., STATE GOV'T § 20-601 et seq. (West 2015). FedEx seeks partial dismissal of Squire's retaliation claim and discrimination claim based on sexual orientation, pursuant to Rule 12(b)(1) and Rule 12(b)(6). In this motion, FedEx does not seek dismissal of the gender or gender identity discrimination claims.

---

[3] Both the "Sex" and "Retaliation" boxes are left empty. EEOC Intake Questionnaire at 2, ECF No. 24-1.

4

II.  DISMISSAL STANDARD

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6)[4] tests the legal sufficiency of a complaint. A complaint need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted).  When evaluating a 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and the complaint is viewed in the light most favorable to the plaintiff.  However, conclusory statements or "a formulaic recitation of the elements of a cause of action will not [suffice]."  Id.  A complaint must allege sufficient facts "to cross 'the line between possibility and plausibility of entitlement to relief.'"  Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 557).

Inquiry into whether a complaint states a plausible claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Id. (quoting Twombly, 550 U.S. at 557).  Thus, if "the well-pleaded

---

[4]   All "Rule" references herein are to the Federal Rules of Civil Procedure.

facts [contained within a complaint] do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (alteration in original)).

III. DISCUSSION

    A.   Retaliation Claim

Plaintiff asserts a claim under MFEPA alleging his termination was in retaliation for an "exercise of his civil rights, in complaining that he was being treated differently and unfairly based upon his gender identity, gender, and/or sexual orientation."  Am. Compl. ¶ 24, ECF No. 20.

In viewing a claim under MFEPA[5], "a federal court may only consider [] allegations included in the EEOC charge."  Balas v. Huntington Ingalls Industries, Inc., 711 F.3d 401, 407 (4th Cir. 2013) (citing Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962-63 (4th Cir. 1996)).  When "factual allegations in the administrative charge are reasonably related to the factual allegations in the formal litigation, the connection between the

---

[5] A MFEPA claim is the Maryland state law analog of a claim under Title VII of the Civil Rights Act of 1964.  See Finkle v. Howard Cnty., Md., 12 F.Supp.3d 780, 784 (D. Md. 2014).  Therefore, in filing a claim under MFEPA, one must follow Title VII procedure, such as exhaustion of administrative remedies.  See id.

6

charge and claim is sufficient." Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005) (citing Smith v. First Union Nat'l Bank, 202 F.3d 234, 247-48 (4th Cir. 2000)). Any claims not included in the EEOC charge or "any charges that would [not] naturally have arisen from an investigation thereof, [] are procedurally barred." Balas, 711 F.3d at 407 (quoting Chacko, 429 F.3d at 506). Because EEOC charges typically are not completed by lawyers, they "must be construed with utmost liberality." Id. at 408 (quoting Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll., 848 F.2d 457, 460 (4th Cir. 1988)).

To assert a claim for retaliation, "a plaintiff must prove three elements: (1) that [they] engaged in a protected activity; (2) that [their] employer took an adverse employment action against [them; and] (3) that there was a causal link between the two events." Id. at 410 (quoting EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 405-06 (4th Cir. 2005). "The [] provision seeks to prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms." Id.

The Court finds that Plaintiff has not alleged retaliation in his EEOC charge form, nor would the information in his EEOC form reasonably relate to retaliation. First, in the section entitled "DISCRIMINATION BASED ON," Plaintiff failed to mark the box specifically titled "RETALIATION." See EEOC Charge, ECF No. 22-1. Additionally, in the section titled "THE PARTICULARS ARE"

where Plaintiff has the chance to explain any alleged discrimination, Plaintiff made no mention of retaliation. Id. Nothing in the remainder of Plaintiff's EEOC charge indicates that retaliation has occurred, or that Plaintiff is alleging it. Further, Plaintiff's EEOC charge does not state that Plaintiff engaged in any protected activity, so an allegation of retaliation cannot be inferred.

Plaintiff contends that the Court must also consider information contained in his EEOC Intake Questionnaire to determine the scope of this civil action. Pl.'s Opp. at 3-5, ECF No. 24. Plaintiff relies on the Supreme Court's ruling in Holowecki, which holds that in some circumstances, an EEOC Intake Questionnaire may constitute a charge. Fed. Express Corp. v. Holowecki, 552 U.S. 389, 410 (2008). However, the Court clearly states that to constitute a charge, "at a minimum" the questionnaire must "objectively indicate[] an intent to initiate the agency's enforcement processes." Id.

Plaintiff's EEOC Intake Questionnaire does not meet this minimal requirement, so the Court will not consider it as part of the EEOC charge. On page four of Squire's EEOC Intake Questionnaire [ECF No. 24-1], there are two boxes that a complainant may check. "Box 1" indicates that the complainant wishes to talk to an EEOC employee regarding whether to file a charge, and "Box 2" states that the complainant wants to file a

charge at this time. Id. at 4. Plaintiff failed to check either box, and did not indicate that he would like the EEOC to take any action anywhere on the remainder of the questionnaire. Id.

"The filing of an administrative charge is not simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." Chacko, 429 F.3d at 510. The purpose of the charge and the reason Title VII has an exhaustion requirement is to provide notice to employers. See id. "This notice gives the employer an initial opportunity to voluntarily and independently investigate and resolve the alleged discriminatory actions." Id. (citing 42 U.S.C. § 2000e-5(b)). Despite the leniency afforded to complainants, Plaintiff has not shown any indication that notice was given to Defendant about his retaliation claim, so that it had an opportunity to try to resolve Plaintiff's grievances.

Because Plaintiff did not allege retaliation in his EEOC charge, Plaintiff's claim for retaliation against Defendant FedEx shall be DISMISSED.

### B. Sexual Orientation Discrimination Claim

Next, FedEx contends that Plaintiff did not allege discrimination based on sexual orientation in his EEOC charge. Def.'s Mot. to Dismiss at 5, ECF No. 21. FedEx argues that

9

Plaintiff only alleges discrimination based on his sex, including his gender identity and being transgender, but not based on his sexual orientation. See id. FedEx states that because "sex" and "sexual orientation" are distinct, a claim for sexual orientation cannot be inferred from Plaintiff's allegations of sex discrimination. See Reply at 3-4, ECF No. 25.

Other courts have looked at whether a relationship exists between sex, sexual orientation, and gender in Title VII claims, and whether a plaintiff must make a separate claim for each. However, no case law definitively states that these terms are either distinct from one another (and thus, must be specifically claimed), or closely related to one another (and thus, do not require separate claims).

When comparing transgendered status and sexual orientation in a hiring discrimination claim, the U.S. District Court for the Eastern District of North Carolina stated that "[t]he distinct nomenclature underscores the fact that the two are different concepts."[6] Lewis v. High Point Reg'l Health Sys., 79 F.Supp.3d 588, 590 (E.D.N.C. 2015). However, the Court noted that "neither the Supreme Court nor the Fourth Circuit's Title VII jurisprudence has addressed" this issue. Id. at 589.

---

[6] In its analysis, the Court looks at dictionary definitions of the terms as well as language used in pending legislation. Lewis, 79 F.Supp.3d at 589-90.

10

The Seventh Circuit recently looked at a related question of whether there is a difference between discrimination based on sex and discrimination based on sexual orientation. See Hively v. Ivy Tech Cmty. Coll. of Indiana, 853 F.3d 339 (7th Cir. 2017). The Court noted that "the line between a gender nonconformity claim and one based on sexual orientation [has been described as] gossamer-thin." Id. at 346. In its decision, the Court concludes that the two claims are inherently the same, and holds that "discrimination on the basis of sexual orientation is a form of sex discrimination." Id. at 340-41.[7]

The Court in Hively relies heavily on the findings of the EEOC, as it is "the agency most closely associated with this law." Id. at 344. In a 2015 decision, the EEOC determined that "sexual orientation is inseparable and inescapably linked to sex." Baldwin v. Foxx, EEOC Appeal No. 0120133080, 2015 WL 4397641, at *5 (July 15, 2015). The EEOC reasons that discrimination based on either sexual orientation or sex (1) "necessarily entails treating an employee less favorably because of the employee's sex[,]" (2) "is associational discrimination on the basis of sex[,]" and (3) "necessarily involves discrimination based on gender stereotypes." Id. at *5-7. Based on its holding, the EEOC states that "[a]gencies should

---

[7] The Court also notes that the Supreme Court has not spoken on this issue. Hively, 853 F.3d at 340.

11

treat claims of sexual orientation discrimination as complaints of sex discrimination[,]" and "make applicants and employees aware that claims of sexual orientation discrimination will ordinarily be processed under Section 1614 as claims of sex discrimination." Id. at *10.

Courts are to view EEOC charges very liberally, especially because the complainant often is not represented by a lawyer. See Balas, 711 F.3d at 408. Here, the Court must permit Plaintiff even more latitude, as the relationship between sex, sexual orientation, and gender is a disputed issue. Additionally, the Court agrees that "society's views of gender, gender identity, sex, and sexual orientation have significantly evolved in recent years. Likewise, the Court is mindful that the legal landscape is transforming as it relates to gender identity [sic], sexual orientation, and similar issues, especially in the context of providing expanded legal rights." Johnston v. Univ. of Pittsburgh of Com. Sys. of Higher Educ., 97 F.Supp.3d 657, 668 (W.D. Pa. 2015).

In Plaintiff's EEOC Charge [ECF No. 22-1], only the box labeled "SEX" is marked under the section titled "DISCRIMINATION BASED ON." However, no box pertaining to sexual orientation exists. See id. In viewing Plaintiff's EEOC charge liberally, the Court finds that it is reasonable that Plaintiff would consider "sex" to encompass "sexual orientation," based on the

12

close relationship of the terms and the fact that there was no separate box specifying sexual orientation.[8]

In order to survive a motion to dismiss, Plaintiff's claim must reach the level of plausibility.  As stated in McCleary-Evans v. Maryland Dept. of Transp., "an employment discrimination plaintiff need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss."  780 F.3d 582, 584 (4th Cir. 2015) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002).  Plaintiff must only plead facts showing it is plausible that FedEx took discriminatory action against him.

In his Amended Complaint, Plaintiff alleges that after undergoing a hysterectomy in August of 2016 and FedEx becoming aware that he was born a female but now identifies as a male, he was subject to discriminatory action by FedEx.  See Am. Compl. ¶ 9, 11, ECF No. 20.  Plaintiff alleges that he was disciplined and criticized by FedEx, despite performing his job duties to the same level as he had before August of 2016.  Id. ¶ 9.  Additionally, upon contacting Martin to raise concerns of discrimination, Plaintiff was told that he should not have been disciplined based on the factual circumstances of each incident.  Id. ¶ 11.  The Court finds that it is plausible that FedEx, now

---

[8] In his EEOC Charge, Plaintiff also alleges discrimination based on "Gender Identity/Transgender," both of which also bear relation to sexual orientation.

aware that Plaintiff was born a woman, and is married to a woman, took discriminatory action against Plaintiff based on his sexual orientation.

Accordingly, Plaintiff's claim for discrimination based on sexual orientation against Defendant FedEx shall not be dismissed.

IV. CONCLUSION

For the foregoing reasons:

1. Defendant FedEx's Partial Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 21] is GRANTED IN PART and DENIED IN PART.

    a. Plaintiff's claim for retaliation is hereby DISMISSED.

    b. Plaintiff's claim for discrimination based on sexual orientation remains pending.

2. By July 17, 2018, Plaintiff shall arrange a telephone conference with all parties and the Court to discuss further proceedings in this case.

SO ORDERED, this Tuesday, June 19, 2018.

/s/
Marvin J. Garbis
United States District Judge